

# Missouri Court of Appeals

## Southern District

### Division Two

CAROL BALLARD,                                )
                                             )
    Claimant-Respondent,             )
                                             )
v.                                           )
                                             )
WOODS SUPERMARKETS, INC.,                     )    No. SD32590
                                             )    Filed: 1-29-14
    Employer-Appellant,              )
                                             )
and TREASURER OF THE STATE OF                 )
MISSOURI AS CUSTODIAN OF THE                  )
SECOND INJURY FUND,                           )
                                             )
    Respondent.                      )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

Woods Supermarkets, Inc. (Employer) appeals from a final award of workers' compensation benefits to Carol Ballard (Ballard). The Labor and Industrial Relations Commission (Commission) found that Ballard was permanently and totally disabled from a back injury she sustained at work.[1] Presenting a single point on appeal, Employer contends the Commission erred in awarding permanent and total disability benefits

---

[1] Because the Commission found Ballard permanently and totally disabled from the work accident alone, no liability was assessed against the Second Injury Fund.

because the Commission relied on Ballard's expert medical opinion, allegedly based on subjective findings, rather than Employer's expert medical opinion based on objective findings, in violation of § 287.190.6(2).[2] Finding no merit in this argument, we affirm.

**Factual and Procedural Background**

In August 2008, Ballard was 58 years old and had worked for Employer for nearly five years. On August 19, 2008, a fryer buzzer was going off in the deli, and Ballard went to turn it off. As she was walking toward the fryer, she slipped on some grease and fell. Her feet went out in front of her, and she attempted to reach back and catch herself. She fell on her back and left arm, and hit her head on the floor. She had immediate pain in her back, left arm and head. As a result of the accident, Ballard was diagnosed with a comminuted distal left radius fracture, disc herniations at L4-5 and L5-S1, and strain/sprain of her cervical and thoracic spine. Ballard underwent treatment for her injuries, including surgeries for her left arm and her back. In November 2008, she applied for workers' compensation benefits.

Ballard's back surgery, which was performed by Dr. Paul Olive in January 2009, involved: (1) a right L5-S1 laminotomy and discectomy; and (2) a left L4-5 laminotomy and discectomy. After surgery, Ballard had extensive physical therapy. Nevertheless, her back pain continued, and she developed radicular pain in her right leg.

In February 2010, at the request of Employer and its insurer, Ballard underwent an independent medical examination with Dr. Jeffrey Woodward. Ballard also underwent an independent medical examination with Dr. Brent Koprivica at her own request in March 2010 and January 2011.

---

[2] All references to statutes are RSMo Cum. Supp. (2008) unless otherwise indicated.

2

In April 2012, a hearing was held before an administrative law judge (ALJ). Ballard's evidence consisted of her medical records, Dr. Koprivica's deposition, Ballard's testimony and that of her vocational expert, Phillip Eldred (Eldred). Employer's evidence consisted of the depositions of Dr. Woodward and James England (England), Employer's vocational expert.

After considering all of the evidence, the ALJ concluded that Ballard was permanently and totally disabled. The ALJ specifically found Ballard's testimony "to be very credible." With respect to Ballard's back, the ALJ found:

> Claimant described constant pain in her lower back that is a "deep pressure like pain." Sometimes it is a burning pain. In addition, she described pain that radiates into her right leg and travels to her foot. Her range of motion has been affected and she cannot turn her head to look behind her. While she can bend at the waist it is painful to do so and she cannot hold that position and must come right back up. She has problems standing for long periods of time, how long depends on the weather and how well she slept the night before. If it is a good day she can stand for one to one and a half hours. On a bad day she can only stand for a short time. ... She also has difficulty sitting. If she sits in a normal chair for 30 minutes her low back pain increases and will travel into her right leg. Walking long distances is difficult for her. On a good day she can walk approximately an hour but on a bad day cannot walk over 10 minutes. She also has difficulty sleeping. She cannot lie on her right side or flat on her back in a bed. ...
>
> Claimant testified that she has to [lie] down in a recliner two to three times a day because of her low back and right leg pain. She has to lie down for approximately 30 minutes to an hour. She testified that it varies the number of times and the length of time she must lie down each day.

The ALJ acknowledged Dr. Woodward's medical opinion, in which he noted Ballard's "residual lumbosacral spine pain ... but without any objective neurologic deficits on exam." In concluding Ballard was nevertheless permanently and totally disabled, the ALJ explained:

I find it credible based on the claimant's testimony and Dr. Koprivica's testimony, that the claimant has a need to recline and actually has to recline for at least 30 minutes up to several times a day. I further find that this is due to her back injury. Based on the restrictions imposed by both Dr. Woodward and Dr. Koprivica, giving particular attention to the fact that claimant has to recline, I find that she is unable to compete in the open labor market and is therefore rendered permanently and totally disabled. Mr. Eldred testified that if the claimant had to recline she would automatically be taken out of the open labor market. Although Mr. England did not find claimant permanently and totally disabled, he did agree that if she had to recline she would be.

Thereafter, Employer appealed to the Commission, which affirmed and adopted the decision of the ALJ. This appeal followed. Additional facts will be included as we address Employer's single point on appeal.

**Standard of Review**

Because the Commission adopted the decision of the ALJ, this Court reviews the findings and conclusions of the ALJ. ***Martin v. Town and Country Supermarkets***, 220 S.W.3d 836, 843 (Mo. App. 2007). We review the Commission's decision to determine if it is supported by competent and substantial evidence upon the whole record. Mo. CONST. art. V, § 18. The scope of our review is limited:

> Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

4

§ 287.495.1 RSMo (2000). "The whole record is considered to determine if there is sufficient competent and substantial evidence to support the Commission's award." *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012); *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). This Court considers whether the Commission could have reasonably made its findings and reached its result, upon consideration of all the evidence before it. *Hornbeck*, 370 S.W.3d at 629.

We defer to the Commission's factual findings and recognize that it is the Commission's function to determine the credibility of witnesses and the weight to be given to their testimony. *Id*.; *Birdsong v. Waste Management*, 147 S.W.3d 132, 137 (Mo. App. 2004). In that regard, "conflicting medical theories present a credibility determination for the Commission to make." *Armstrong v. Tetra Pak, Inc.*, 391 S.W.3d 466, 470 (Mo. App. 2012). Therefore, the Commission's decision as to which of the various medical experts to believe is binding on this Court. *Id*. at 471. "Commission decisions that are interpretations or applications of law, on the other hand, are reviewed for correctness without deference to the Commission's judgment." *Birdsong*, 147 S.W.3d at 138. We independently review questions of law. *Id*.; *see Johnson v. Denton Construction Co.*, 911 S.W.2d 286, 287 (Mo. banc 1995).

### Discussion and Decision

Employer contends the Commission misapplied the law by relying on Dr. Koprivica's medical opinion that Ballard "must recline throughout the day," which Employer maintains is an opinion based on "subjective" findings. Employer then argues that the Commission relied on that medical opinion over Dr. Woodward's medical opinion, which Employer asserts is based on "objective" findings. Employer therefore

5

argues that the Commission violated § 287.190.6(2), which provides that a medical opinion based on objective medical findings must prevail over an opinion based on subjective medical findings. Section 287.190.6(2) states:

> Permanent partial disability or permanent total disability shall be demonstrated and certified by a physician. Medical opinions addressing compensability and disability shall be stated within a reasonable degree of medical certainty. In determining compensability and disability, *where inconsistent or conflicting medical opinions exist, objective medical findings shall prevail over subjective medical findings.* Objective medical findings are those findings demonstrable on physical examination or by appropriate tests or diagnostic procedures.

*Id*. (emphasis added). Because the issue in this case only involves medical opinions with respect to Ballard's pain and need to recline, the following facts are relevant to this point.

Dr. Koprivica testified that Ballard suffers from a "failed laminectomy syndrome[.]" Given that diagnosis, Dr. Koprivica opined that "I felt her need to recline was consistent with the failed laminectomy syndrome, and – and it goes along with the need to try to get pain relief as well as the sleep interruption, that was attributable to the August 19th, 2008, injury." Dr. Koprivica also testified that Ballard's need to recline was consistent with her "objective impairment":

> Q. ... You listed as another functional limitation, Ms. Ballard's need to recline. Do you have any opinion as to how often or how frequent – or how long she needs to recline?
>
> A. Yes, and let – let me be clear on the record. I don't think that's a restriction. I know you said – used the word limitation. I do think it's a limitation on her part. What I was meant to – meaning to convey in my report is *I think it is consistent with the objective impairment* she has in her low back that she would have that need.

(Emphasis added.) Employer's own expert, Dr. Woodward, testified that "postoperative epidural spine scarring which was due to the surgical procedures can be a source of pain." Dr. Woodward also referenced a July 2009 MRI in which another doctor noted "a

6

possible small right L5-S1 disc protrusion that could also contribute to the patient's ongoing discomfort." Lastly, Dr. Woodward testified that there is no objective test that could quantify the level of pain Ballard is experiencing in her lumbar spine or in her leg.

Employer's argument, as we understand it, is that Dr. Koprivica's medical opinion, referencing Ballard's need to recline throughout the day, is a medical opinion based on "subjective" findings because it is based solely on Ballard's report of her pain. We find no merit in this argument.

Dr. Koprivica's report and deposition testimony establish that his medical opinion is based on objective medical findings. Dr. Koprivica diagnosed Ballard with failed laminectomy syndrome. Ballard's pain and need to recline is entirely consistent with his diagnosis. Ballard's pain is also consistent with Dr. Woodward's testimony that postoperative epidural spine scarring due to the surgical procedures can be a source of pain. We reject Employer's argument that because Ballard's report of pain is "subjective," it cannot be considered. As Dr. Woodward testified, there is no objective test for pain. The extent to which a claimant experiences pain is a credibility determination for the Commission to decide. *See, e.g.*, ***Russell v. Invensys Cooking & Refrigeration***, 174 S.W.3d 15, 22-23 (Mo. App. 2005). Here, the Commission obviously believed Ballard suffers from the pain she described, as the Commission specifically found Ballard "very credible." This Court must defer to that credibility determination. ***Hornbeck***, 370 S.W.3d at 629; ***Birdsong***, 147 S.W.3d at 137. Because Dr. Koprivica's medical opinion is based on objective medical findings, the Commission correctly applied § 287.190.6(2). Accordingly, the Commission did not err in relying on Dr.

Koprivica's medical opinion.  Point denied.[3]  The final award of the Commission is affirmed.

JEFFREY W. BATES, P.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR

---

[3] Employer relies on ***Johnson v. Indiana Western Exp., Inc.***, 281 S.W.3d 885 (Mo. App. 2009), in support of its argument that objective medical findings, namely MRI findings, must prevail over medical opinions based on an employee's testimony. ***Johnson***, however, is distinguishable from the case at bar.  In ***Johnson***, the employee had a low back injury in 2004 that resulted in surgery.  ***Id***. at 887.  In June 2005, the employee had an MRI performed and the doctor recommended more physical therapy and suggested a possible second surgery. ***Id***. The employee did not follow up with the doctor following this MRI, and instead returned to work and had an alleged second injury to his low back in 2006.  ***Id***.  Following the 2006 alleged injury, another MRI was performed which showed no changes since the June 2005 MRI.  ***Id***. at 888.  The employee testified he made a full recovery from the 2004 injury before sustaining the 2006 injury.  Based on the more recent MRI, however, the doctor opined there had been no new injury in 2006 and that the employee's problems all related back to the 2004 injury.  ***Id***. at 887-89.  In choosing between the evidence offered via the two MRI scans, versus the employee's testimony, the court accepted the findings of the MRI scans.  ***Id***. at 891-92.  ***Johnson*** is distinguishable here because Dr. Koprivica's medical opinion is based on objective medical findings – namely his diagnosis of failed laminectomy syndrome –  and not solely on Ballard's testimony concerning her pain.  Further, Ballard's report of pain is entirely consistent with Dr. Koprivica's diagnosis, and in some respects, with Dr. Woodward's testimony.  Therefore, Employer's reliance on ***Johnson*** is misplaced.