Shelly L. MAXON, Claimant–Respondent,

v.

LEGGETT & PLATT, Employer–Appellant,

and

Continental Casualty Co., Insurer–Appellant,

and

Jasper Foods, Inc., CGU Hawkeye Security Ins. Co., and Safeco/ American States Ins. Co., Respondents.

No. 23060.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 19, 2000.

John David Jurcyk & Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Lenexa, Kan., for Appellants Leggett & Platt and Continental Casualty Co.

Charles Buchanan, Joplin, for Claimant–Respondent.

Steven T. Shanholtzer & Susan F. Colburn, Wallace, Saunders, Austin, Brown, & Enochs, P.C., Springfield, for Respondents Jasper Foods, Inc. and Hawkeye Security Ins. Co.

JAMES K. PREWITT, Judge.

Claimant received an award from the Labor and Industrial Relations Commission determining that Appellant Leggett & Platt was responsible for paying or furnishing her certain Workers' Compensation benefits. Leggett & Platt and its insurer, Continental Casualty Company, appeal.

Claimant began her employment with Jasper Foods on March 8, 1993, where she worked packing single packages of microwave popcorn. Claimant worked approximately six hours of an eight-hour shift retrieving packages from a conveyor belt, in a seated position, at a rate of approximately forty bags per minute, grabbing three bags at a time and transferring the bags to another machine. For the remaining two hours of an eight-hour shift, Claimant stood and boxed packages of popcorn.

Claimant testified that her hands began cramping and swelling "pretty much from the start." She first went to the emergency room at Barton County Hospital complaining that her arms were hurting and she had "a lot of pain and swelling." It was not until July, 1993, when it "became harder [for Claimant] to pick things up," that Claimant reported her complaint to a supervisor. She was referred to the company doctor, Mark Catron, D.O., in February or March of 1994. His initial diagnosis was carpal tunnel syndrome, for which he prescribed an anti-inflammatory medication and referred Claimant to a neurologist.

On March 24, 1994, Claimant was examined by Christopher Andrew, M.D., a neurologist, who preformed an "EMG study," a nerve conduction study, and diagnosed Claimant's condition as "tendonitis and overuse of the wrist," with "no evidence of carpal tunnel syndrome." Dr. Andrew advised continuation of conservative treatment. Thereafter, Claimant occasionally wore a wrist brace, which she said helped some.

No further medical attention was provided to Claimant, although she testified that early in July of 1994, she asked her employer to arrange another appointment because she was experiencing pain in her shoulders.

In August of 1994, Claimant sustained neck and back injuries in a vehicular accident, for which she received chiropractic adjustments four times a week for two and one-half months following the accident.

From September of 1993, until March of 1994, Claimant also worked part-time at Smith Foods. She worked there approximately twelve to sixteen hours a week, cooking cleaning, stocking and cashiering.

She was released from her employment at Jasper Foods in September of 1994, because of excessive absences related to other medical problems. She remained unemployed for six weeks, during which time the problems with her wrists, hands and arms continued to worsen. Claimant alleges she was also having pain in her shoulders.

In November of 1994, Claimant was hired at Leggett & Platt, and began her employment there as a "wire bender." In this capacity, Claimant would insert a straight piece of wire into a machine, press two buttons, remove the wire and stack it. She would repeat the process approximately 1,800 times, working eight hours per day, five days per week. She worked at this position for three weeks, until she was switched to a position at which she pulled trolleys through the plant. She occasionally wore her wrist brace. Claimant testified that the "wire bending" position at Leggett & Platt was the "least hand intensive job in the plant." She also testified that she informed the person who interviewed her and another person who was present during her orientation about her physical problems.

In January, 1995, Claimant went to a "tag control job," wherein she applied and scanned bar-coded tags to inventory within the plant. Occasionally she worked in the receiving office, completing paperwork. Claimant was terminated from Leggett & Platt on April 4, 1995, for excessive absenteeism.

On November 27, 1995, Claimant filed her initial claim, alleging an occupational disease caused by repetitive motion afflicting her right and left wrists, which occurred in "March 1994[a]pproximately." The first claim named both Jasper Foods and Leggett & Platt as employers. In an amended claim, filed on December 30, 1996, Claimant named only Jasper Foods as employer, and provided a different date of injury, that being "[b]etween March 1993 and September 1994[a]pproximately." Two more claims were filed on December 30 and 31, 1996, against Leggett & Platt and naming the Second Injury Fund, with one claim designating an injury date as "November 1994[a]pproximately", and the other claim listed "between November 1994 and May 1995." Subsequently, Claimant dismissed her claim against the Second Injury Fund, and through a new attorney filed an amended claim against Jasper Foods and another amended claim against Leggett & Platt. Both claims designated her injury as involving "[r]ight wrist, arm and shoulder; [l]eft wrist, arm and shoulder," and amended the date of injury to "[a]pproximately March 1994."

Following a hearing on November 2, 1998, the Administrative Law Judge found that "claimant is suffering from overuse of the upper extremities (tendonitis) chronic muscle pain and myofacitis ..., an injury sustained by occupational disease arising out of her employment." Awarding Claimant compensation on a temporary basis, the judge assigned responsibility for Claimant's future medical care to Leggett & Platt and its insurer, "as the last employer to expose claimant to the hazards of her occupational disease prior to the filing of her claim." On her claim against Jasper Foods, Claimant was awarded weekly compensation at a rate of $175.82, and as to her claim against Leggett & Platt, Claimant was awarded weekly compensation at a rate of $172.63. Leggett & Platt had argued that proper notice of Claimant's injury was not provided, and the lack of notice prejudiced employer. The Administrative Law Judge ruled that notice was not required under Missouri law in cases of occupational disease, and that the filing of Claimant's claim was sufficient notice for the employer in any event. The ruling also directed further medical evaluation "to determine more fully the nature of claimant's condition."

The parties agree that because this award determines liability, an appeal lies, even though it was a temporary award. *See Crabill v. Hannicon,* 963 S.W.2d 440, 442 n. 1 (Mo.App.1998); *Walker v. Klaric Masonry, Inc.,* 937 S.W.2d 219, 220 (Mo. App.1996).[1]

■ The Commission affirmed and adopted "the award and decision of the administrative law judge dated February 9, 1999," attaching and incorporating the same by reference. Therefore, this Court reviews the findings and rulings of the administrative law judge as part of the Commission's decision. *Reese v. Coleman,* 990 S.W.2d 195, 197 n. 2 (Mo.App.1999).

■ An appellate court reviewing a decision of the Labor and Industrial Relations Commission conducts a two-step analysis. First, the reviewing court examines the record, together with all reasonable inferences to be drawn from evidence therein, in the light most favorable to the findings and the award of the Commission to determine whether they are supported by competent and substantial evidence. If so, the reviewing court must then determine whether the Commission's findings and award, even if supported by some competent evidence, are nevertheless clearly contrary to the overwhelming weight of the evidence contained in the record before the Commission. *Davis v. Research Med. Center,* 903 S.W.2d 557, 565 (Mo.App.1995).

■ Whether a Workers' Compensation claimant's injury is an accident or an occupational disease is a question of fact. *Holaus v. Wm. J. Zickell Co.,* 958 S.W.2d 72, 79 (Mo.App.1997). For the appellate court to substitute its opinion of facts as decided by the Labor and Industrial Relations Commission would be to violate limitations placed upon the court's review in Workers' Compensation cases. *Shaffer v. St. John's Reg'l Health Center,* 943 S.W.2d 803, 807 (Mo.App.1997). Decisions that

are interpretations or applications of law, rather than determinations of fact, are reviewed for correctness without deference to the Commission's judgment. *Coloney v. Accurate Superior Scale Co.,* 952 S.W.2d 755, 758 (Mo.App.1997).

■ A reviewing court defers to the fact-finding body on credibility of witnesses and the weight to be accorded their testimony in workers' compensation cases. *Jaycox v. General American Life Insurance Co.,* 992 S.W.2d 240, 244 (Mo.App. 1999). The Court of Appeals defers to the Labor and Industrial Relations Commission on issues concerning credibility and weight to be given to conflicting evidence and testimony. *Holaus,* 958 S.W.2d at 74. The Commission is free to disregard testimony of a witness even if no contradictory or impeaching evidence is introduced. *Id.*

■ Appellants present two points critical of the award. Their second point contends that it is Respondent Jasper Foods, Inc. which should be assessed for the benefits because Claimant suffered from an occupational disease due to repetitive motion and was not exposed to repetitive motion for a period of three months while working for Leggett & Platt. At issue here is the application of Section 287.063.1 and .2, RSMo 1994, as modified by Section 287.067.7, RSMo 1994.

Section 287.063.1 and .2 state:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he [or she] is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 7 of section 287.067, RSMo.

2. The employer is liable for the compensation in this section provided shall be the employer in whose employ-

---

1. Appellants' first point asserts that an appeal lies from the temporary award, and as Respondent and this Court agree, no further discussion of that point is necessary.

ment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure. Section 287.067.7 states:

With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

Point II states:

The Labor and Industrial Relations Commission erred in holding that the date of Claimant's accident or occupational disease due to repetitive motion was the dates of employment by Leggett & Platt. While working for Leggett & Platt, Claimant was not exposed for a period of ninety days to repetitive motion activities causing or aggravating her preexisting medical condition.

In order to determine the employer liable for a particular occupational disease, under Section 287.063, it is first necessary to evaluate the nature of the claim at issue. *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo.banc 1995). The starting point in applying the last exposure rule is that the employer liable for compensation is the last employer to expose the employee to the occupational hazard prior to the filing of the claim. *Johnson* at 288; *Kelley v. Banta & Stude Constr. Co., Inc.*, 1 S.W.3d 43, 49 (Mo.App.1999).

■■■■ "Section 287.063.2 fixes liability for occupational disease on the employer who last exposed the employee to the hazard for which the claim is made," *Kelley*, 1 S.W.3d at 52, "regardless of the length of time of such last exposure." Section 287.063.2. "[M]ere exposure is not enough to shift liability to a subsequent employer. Instead, the subsequent employer must ex-

pose the employee to repetitive motion capable of producing [claimant's ailment]." *Coloney*, 952 S.W.2d at 763.

■■■■ "In determining application of the rule [§ 287.063, RSMo 1986], the time frame of employment, injury and filing of the claim become critical." *Anderson v. Noel T. Adams Ambulance District*, 931 S.W.2d 850, 853 (Mo.App.1996). Section 287.067.7 was added in 1993, and did not apply retroactively to the facts in *Anderson*. "Pursuant to the last exposure rule, determination of liability is not dependent upon the date of disability. The last exposure rule is not a rule of causation. Instead, . . . liability falls on the last employer to expose Claimant to the occupational hazard for which claim is made." *Crabill*, 963 S.W.2d at 444, *citing Johnson*.

Appellants contend that the positions held by Claimant while employed at Leggett & Platt did not involve repetitive hand or arm movement to the extent that her previous position at Jasper Foods did, and regardless of the extent of any repetitive motion while Claimant worked for Leggett & Platt, her employment as a "wire bender" lasted only three weeks. Appellants assert that the Commission erred "in refusing to apply RSMo. 287.067.7 to this case and, specifically, erred in imposing liability for medical compensation on the claimant's 'second employer,'" in that there was no dispute that Claimant's prior employment with Jasper Foods "was the substantial contributing factor to the accidental injury or occupational disease alleged," and that there was no credible evidence that Claimant had been exposed to repetitive motion for three months, if at all, in her subsequent employment at Leggett & Platt. Appellants contend that since Section 287.067.7 requires liability be imposed upon the prior employer if the subsequent exposure is for a period of less than three months, then liability for Claimant's future medical care should be imposed on Jasper Foods, which knew of claimant's ailments but refused to provide further medical care.

Appellants point to the evidence that Claimant sought and received medical attention in February and March of 1994, while employed with Jasper Foods, and she was diagnosed with tendinitis, overuse syndrome, or carpal tunnel syndrome. In addition, Appellants contend the Claimant did not seek any medical treatment for her condition while employed with Leggett & Platt. They further allege error in the Administrative Law Judge's reliance on testimony from Dr. Hopkins asserting he misstated the nature of Claimant's employment with Leggett & Platt, by erroneously describing "the tag control job as one requiring repetitive motion," and speculating that Claimant's condition may have deteriorated or been aggravated while employed with Leggett & Platt. Whether or not the wire or edge bender job involved a repetitive motion, Appellants contend that Claimant held that position for only three weeks and application of § 287.063.2 was erroneous and not supported by the evidence.

Addressing the finding that Claimant suffers from an "occupational disease," Appellants contend this is a case of accidental injury, for which liability should be imposed on the prior employer, Jasper Foods. We discuss only the contentions in Appellants' points.

The findings and rulings reflect the Administrative Law Judge's awareness and consideration of both the statutes and the length of time Claimant was employed at Leggett & Platt as a wire bender. The judge noted that the wire bending job lasted "approximately three weeks," and was "not as repetitive as her work at Jasper Foods," but was "more repetitive than the tag control work which constituted the remainder of her employment...." Two physicians testified at the hearing. Ted A. Lennard, M.D., an examining physician on behalf of American States Insurance (Jasper Foods' insurer), attributed "only a small portion of claimant's problems" to the repetitive motion required in her position at Jasper Foods. His diagno-

sis of Claimant's condition was chronic upper extremity muscle pain, or tendinitis, and recommended additional evaluation and testing. Although his diagnosis focused mainly on her "hand, wrist and midforearm level bilaterally," he believed that Claimant's elbow and shoulder problems were not related. He also hypothesized that Claimant's employment at Jasper Foods, Smith Foods, Leggett & Platt, and Express Truck Stop would expose Claimant "to an overuse problem in her hands and wrists."

James P. Hopkins, M.D., an examining physician on behalf of Claimant, testified that Claimant manifested some clinical symptoms of carpal tunnel syndrome, and opined that Claimant's problems with the "shoulders, forearms, and wrists ... are caused by overuse." He further testified that he considered Claimant's employment at Jasper Foods as "a substantial contributing factor in the overuse injury ...," as was her employment at Leggett & Platt. Dr. Hopkins' diagnosis also included "unresolved neuropathy to the hands," and stated that it was mandatory that Claimant receive further evaluation by both a hand specialist and a physical/occupational therapist.

On this issue, the Administrative Law Judge found:

It is the clear-cut testimony of both the physicians who testified that Jasper Foods caused claimant's significant chronic muscle pain and tendonitis. Dr. Hopkins additionally opined that claimant's problem with both arms from the hands to the shoulders were related to claimant's work at Jasper Foods. However, Dr. Hopkins also found an aggravation of the injuries through claimant's work at Leggett & Platt. Dr. Lennard merely stated that claimant's hand and wrist symptoms continued through her employment at Leggett and Platt and that he needed additional testing to fully rule out further work causes of claimant's problems.

In determining that Claimant's "last exposure" occurred during her employment at Leggett & Platt, the judge noted that it is "[t]he last exposure to the occupational disease prior to the filing of the claim that is dispositive." Both doctors who testified at the hearing conceded that the work performed by Claimant at Jasper Foods and subsequently Leggett & Platt would expose Claimant to an overuse injury.

The Administrative Law Judge relied on testimony and reports of Dr. Hopkins. Finding Dr. Hopkins to be a credible witness, and noting there was no evidence of claimant's exposure to the hazards by a subsequent employer, the judge deferred to Dr. Hopkins' finding that Claimant's bilateral arm problems were "related directly to her employment at Jasper Foods as aggravated by her employment at Leggett & Platt."

The Administrative Law Judge applied case law regarding recent repetitive trauma cases, citing *Johnson, Coloney, Shaffer*, and *Holaus, supra*, to support his determination of liability as an occupational disease, stating:

> I find that the facts in this case merit a determination of liability as an occupational disease. That is the theory upon which this case was submitted by claimant. It also seems to be the generally applied method of dealing with repetitive trauma cases most recently. See *Coloney, Shaffer, Houlas* [sic], *supra*. It also appears to be the manner in which almost every court would now determine repetitive trauma cases – *Smith* being the most prominent exception."

In his findings and rulings, the judge pointed out that Section 287.067.7 modifies Section 287.063.1, "[w]ith regard to occupational disease due to repetitive motion," in situations where claimant has been exposed to a hazard in the course of employment with more than one employer. If the exposure "is for a period of less than three

months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease." In deciding the liability for Claimant's future treatment to be that of Leggett & Platt's, and not that of Jasper Foods, the judge explained:

> [I]t is only when there are competing contributing factors between employers and the last employment is for less than three months that § 287.067.7 would apply. Otherwise, under the statute dealing with occupational disease, exposure to the hazards of an occupational disease for a period of time no matter how short is all that is required. Actual causation under those circumstances is of no consequence. Such is the situation in this case since claimant worked more than three months for Leggett & Platt.

Our examination of the record convinces us that this is indeed a close case, but that it turns on a question of fact which is the determination of the Commission and not this Court. There was sufficient evidence for the Commission to determine that Claimant's duties at Leggett & Platt required the same repetitive motion as that which was the cause of her injury for a period of at least three months. There seems to be little doubt but that her "wire bending" job of three weeks did so, and while her "tag control" job did not require as extensive a use of her hands as the "wire bending" duties, it was determined to be repetitive. The Administrative Law Judge found repetitive motion to be present in the "wire bending" job, but less so in the "tag control" job, necessarily determining that both had repetitive motion.[2]

We agree with Appellants that it is not the term of employment that governs under Section 287.067.7, but it is the period of exposure to the repetitive motion, which

**2.** The Administrative Law Judge was the Honorable Robert H. House who made carefully considered and detailed Findings of Fact and

Ruling of Law and Award, consisting of twenty-two pages.

**733**

must be at least three months. We also agree that the expert witness upon whom the Administrative Law Judge and the Commission appear to have primarily relied, presented testimony that could be viewed as different from Claimant's regarding her repetitive motion. Nevertheless, he was an expert, and it is not necessarily the amount of time on a daily basis that the repetitive motion occurred throughout the three months, but that there was an exposure to repetitive motion for that period which was the cause of the injury.

 A reviewing court will not disturb the choice of one medical opinion over another by the Labor and Industrial Relations Commission in a workers' compensation case unless the choice clearly results from an abuse of discretion. *Jaycox*, 992 S.W.2d at 244. In a Workers' Compensation case, it is the sole discretion of Labor and Industrial Relations Commission "to determine weight to be given expert opinions, and that cannot be reviewed by this Court." *Holaus*, 958 S.W.2d at 74. "A single medical opinion will support a finding of compensability even where the causes of the disease are indeterminate." *Kelley*, 1 S.W.3d at 48. "Where the opinions of medical experts are in conflict, the fact-finding body determines whose opinion is the most credible ...," and may "reject all or part of one party's expert testimony which it does not consider credible and accept as true the contrary testimony given by the other litigant's expert." *Id.*

Appellants also contend that the Commission's award was improper because Claimant did not give timely notice of her injury or occupational disease to Leggett & Platt, which resulted in prejudice to it.

Section 287.420, RSMo 1994, requiring notice of an injury, has been held not to apply to occupational diseases. *Elgersma v. DePaul Health Center*, 829 S.W.2d 35, 37 (Mo.App.1992). *See also Kintz v. Schnucks Markets, Inc.*, 889 S.W.2d 121, 124 (Mo.App.1994). Even so, where notice is an issue, it is a question of fact to be determined by the Commission. *Summers v. Harbor Performance Corp.*, 754 S.W.2d 953, 954 (Mo.App.1988). Here, claimant testified that she had relayed her occupational disease problems to Leggett & Platt's representatives and even wore a wrist brace at work. This contention has no merit.

After a review of the evidence in the light most favorable to the findings and the award, we determine that the award is supported by competent and substantial evidence. The award is not contrary to the weight of the evidence. This award is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.